## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
        Plaintiff,

v.                                                                    CRIM. NO. 19-172 (FAB)

PABLO DE LA CRUZ-ARIAS,
        Defendant.

## <u>REPORT AND RECOMMENDATION</u>

Pending before the Court is defendant's motion to suppress evidence seized from the trunk of a car belonging to the defendant's consensual partner during the execution of a search warrant issued by a Puerto Rico Municipal Court Judge (the "Motion to Suppress"). Docket No. 28. The defendant, Pablo De La Cruz-Arias (the "defendant"), contends that the affidavit submitted in support of the search warrant: 1) failed to establish probable cause, and 2) contained material misstatements that were either intentionally false or were made with reckless disregard of the truth. He also contends that 3) the agents violated the "knock and announce" rule when they forced entry into the apartment, 4) the defendant's consensual partner's consent to search her vehicle constituted fruit of the poisonous tree and the evidence seized therefrom should be suppressed, and 5) the defendant's statements to police constituted fruit of the poisonous tree and should therefore be suppressed. In opposition, the United States argued that the defendant failed to meet his burden to void the search warrant under either 1) probable cause grounds, or 2) on the grounds that the affidavit contained material misstatements, and that 3) a violation of the "no knock rule," even assuming it did occur, does not provide grounds for the

suppression of evidence, 4) the defendant lacks standing to challenge the consent search of his consensual partner's car, and 5) the defendant was not coerced into confessing to owning the ammunition by the agent's mere suggestion that his consensual partner might be charged with a crime. For the reasons espoused further below, the Court recommends that defendant's Motion to Suppress (Docket No. 28) be **DENIED**.

## I.    Background

On March 1, 2019, officers from the Puerto Rico Police Department ("PRPD") conducted a search of an apartment pursuant to a search warrant looking for drugs and guns. During the search of the apartment, officers found two sets of keys; one set belonging to a red 2009 Toyota Corolla, which the defendant's consensual partner, Ms. Rose Bilbraut, volunteered belonged to her, and another set that had three (3) keys that did not correspond to the apartment being searched. Other than the two sets of keys, the officers did not find any contraband in the apartment. At one point during the search, however, the officers asked Ms. Bilbraut for her consent to search the red Toyota Corolla, which she gave. Upon searching the vehicle, the officers found two pistol magazines together with a total of 19 rounds of .40 caliber ammunition. Based on this evidence, the defendant was charged with being a felon in possession of ammunition, in violation of Title 18, *United States Code*, Section 922(g)(1) (the "Indictment"). Docket No. 8, as amended by Docket No. 43.[1]

---

[1] On October 25, 2019, the grand jury returned a superseding indictment. The only difference between the two indictments was the addition of the "knowledge" element under Section 922(g)(1). More specifically, the superseding indictment alleged that, at the time the defendant possessed the firearm, he "knew" he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year.

Case 3:19-cr-00172-FAB    Document 52    Filed 12/11/19    Page 3 of 23

*United States v. Pablo De La Cruz-Arias*                                    3
Report and Recommendation
Crim. No. 19-172 (FAB)

A.    <u>The Search Warrant</u>

On February 26, 2019, Puerto Rico Municipal Court Judge Rafael J. Parés-Quiñones found probable cause to issue a search warrant of Apartment 467, Building 36, of the Vista Hermosa Public Housing Project ("VHPHP") (the "Warrant"). The Warrant was based on a supporting affidavit submitted by PRPD Agent Stephanie M. Alvarado-Díaz ("Agent Alvarado-Díaz"). Docket No. 31-1 (certified translation). The following is a summary of the pertinent facts set forth in Agent Alvarado-Díaz' affidavit.

On February 13, 2019, Agent Alvarado-Díaz began her shift at PRPD's San Juan Narcotics, Vice Control and Illegal Weapons Division, at approximately 2:00AM. At around 6:10AM, she met with Sgt. Delgado-Arzuaga who gave her a confidential complaint that he received from a paid informant the prior day. The complaint indicated that a "white-complexioned, heavyset-young man of average height, lived at Apartment 467, Building 36 of the VHPHP, and that he used that apartment to store guns and drugs." She was instructed to personally verify the information using surveillance together with her assigned equipment, which included a portable radio, a notebook, and an unmarked cruiser that was to be driven by Agent Denis Burgos-Rodríguez.

Agent Alvarado-Díaz left the San Juan Narcotics office around 3:00PM and arrived at the VHPHP shortly thereafter. After locating Building 36, she exited the undercover vehicle and walked towards the front of Building 36. She indicated that at around 3:30PM, she assumed a strategic position "where she had full visibility of the apartment to be surveilled." Approximately 10 minutes later, she observed a tall black-complexioned individual, with short black hair, dressed in long jeans and shirtless standing in front of Building 36. She could see that the

Case 3:19-cr-00172-FAB    Document 52    Filed 12/11/19    Page 4 of 23

*United States v. Pablo De La Cruz-Arias*                4
Report and Recommendation
Crim. No. 19-172 (FAB)

individual had a black pistol with an extended magazine stuck in the right front waistband of his pants. After several minutes, she saw that same individual enter Building 36 and open the first door on the left-hand side of the hallway leading into Apartment 467. After several more minutes, and after purportedly witnessing a crime, she explained to Sgt. Delgado-Arzuaga what she had seen. Sgt. Delgado-Arzuaga, in turn, instructed her to withdraw from the scene for her safety and for the security of the investigation. Upon returning to the precinct, Agent Alvarado-Díaz was instructed by Sgt. Delgado-Arzuaga to continue the investigation on the February 15, 2019.

On February 15, 2019, Agent Alvarado-Díaz went on duty at around 6:00AM, again under the supervision of Sgt. Delgado-Arzuaga. She informed Sgt. Delgado-Arzuaga that she was going to continue the investigation that she began on February 13, 2019, using the same equipment she had been assigned before namely, a portable radio, a notebook and an unmarked vehicle, which she herself would drive this time.

At around 6:50AM, Agent Alvarado-Díaz arrived at the VHPHP. Within approximately 5 minutes, she observed two individuals exit from the interior of Apartment 467 and walk towards the area of the porch. After several minutes, she saw a white-complexioned male approach the porch. One of the individuals wearing a red T-shirt and white cap then went inside Apartment 467. A few moments later, that same individual emerged with several large transparent baggies containing what looked like, according to the agent's training and experience, marijuana, which he then delivered to another individual through the white metal security gate.

Case 3:19-cr-00172-FAB    Document 52    Filed 12/11/19    Page 5 of 23

*United States v. Pablo De La Cruz-Arias*                                    5
Report and Recommendation
Crim. No. 19-172 (FAB)

After waiting a few minutes, Agent Alvarado-Díaz contacted Sgt. Delgado-Arzuaga who instructed her to leave the scene for the same reasons as before. Upon returning to the precinct, Agent Alvarado-Díaz was instructed by Sgt. Delgado-Arzuaga to visit the Investigative Unit to swear-out a search warrant to search Apartment 467 for guns and drugs.

On February 26, 2019, finding there to be probable cause for the presence of drugs and guns in Apartment 467, Building 36, of the VHPHP, Municipal Court Judge Rafael J. Parés-Quiñones issued the Warrant.

B.    Execution of the Search Warrant[2]

On March 1, 2019, at approximately 4:00AM, PRPD agents went to Apartment 467, Building 36, of the VHPHP to execute the Warrant. According to the government, the agents knocked and announced their presence and after receiving no response, they breached the door of Apartment 467.[3] Inside Apartment 467, agents found two adults and two minors. The two adults included the defendant and a female, who identified herself as Rose Bilbraut.

Ms. Bilbraut apparently claimed to be the person responsible for Apartment 467 and was thus given a copy of the Warrant to sign, thereby acknowledging its receipt. Docket No. 34-3. Both adults

---

[2] The version of facts proffered by the defendant differs slightly from the version of facts proffered by the government, but those differences are not material to the issues presented, and do not impede the Court from ruling on the merits of the claims raised in the Motion to Suppress without the need for an evidentiary hearing. *See United States v. Jimenez*, 419 F.3d 34, 42 (1st Cir. 2005) ("A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.").

[3] The defendant disputes the fact that the PRPD agents knocked and announced their presence, claiming instead that they simply broke the door down and "entered with their weapons drawn."

Case 3:19-cr-00172-FAB    Document 52    Filed 12/11/19    Page 6 of 23

*United States v. Pablo De La Cruz-Arias*                                    6
Report and Recommendation
Crim. No. 19-172 (FAB)

indicated that there was nothing illegal inside the apartment and cooperated fully with the officers in executing the Warrant. *Id.* at 4.

During the execution of the Warrant, Ms. Bilbraut accompanied the agents, while the defendant cared for the minor children. *Id.* The search itself did not yield any illegal items inside the apartment. Agents did, however, find two sets of keys. One set belonged to a Toyota vehicle, while a second set contained three (3) keys that did not appear to correspond to Apartment 467.

Ms. Bilbraut volunteered that the vehicle keys belonged to her red 2009 Toyota Corolla. The government proffered in its Response in Opposition to the Motion to Suppress (Docket No. 34 at 4) that Ms. Bilbraut indicated that there was nothing in the vehicle, so she freely provided her consent to search it. Upon searching the vehicle, however, the PRPD agents found two pistol magazines together with a total of 19 rounds of .40 caliber ammunition. Upon finding the ammunition in her car, she appeared surprised and stated that they must belong to Pablo (the defendant) as they were not hers. After corroborating that she did not have a license to possess firearms, she was arrested for possessing ammunition without a permit, in violation of Art. 6.01 of the Puerto Rico Weapons Law and was transported to the PRPD office for processing.

With respect to the second set of keys that were found in the master bedroom of Apartment 467, within a drawer that Ms. Bilbraut indicated belonged to the defendant, the government proffered that the defendant said that the keys belonged to *his* apartment as he did not live in the same apartment as Ms. Bilbraut. Based on that information, a PRPD agent decided to verify whether the keys matched any of the other doors to the apartments that shared the same stairwell. Using the second set of keys, the PRPD agents were able to unlock the two locks of another apartment on the third floor of the same building. The agents

were unable, however, to access that apartment as it appeared to be locked from the inside as well.

While the agents were testing the keys, the occupants of that third-floor apartment opened the door and provided their consent to search their apartment. Based on their consent, PRPD agents discovered a stash of firearms, including 3 machineguns, 3 rifles, 4 Glock conversion devices and around 2,000 rounds of ammunition. One of the PRPD agents who searched the third-floor apartment received information that 1) the firearms belonged to the defendant, 2) the defendant paid to stash the weapons there, and 3) the defendant had the keys to the apartment to come and go as he wished.

Based on this information, as well as the defendant's statements, the agents placed the defendant under arrest for violating Puerto Rico's Weapons Law, for illegally possessing the firearms and ammunition found in the third-floor apartment. The defendant was then advised of his Miranda rights and was taken to the PRPD office for processing.

At the PRPD office, the defendant asked about his consensual partner and was informed that she had been arrested for what had been found inside her car. The defendant then purportedly claimed ownership for what was found in the car. During his recorded interview with agents, after waiving his Miranda Rights, he claimed that around midnight, he was chopping down a tree in the yard and found the two (2) magazines and put them in the trunk of his consensual partner's vehicle. He then changed his story with respect to the second set of keys claiming that he had found them on the stairs on the same day he found the magazines.

Ms. Bilbraut also gave a recorded interview with agents, during which she said she purportedly consented to the search of her home and car because she trusted that there was nothing illegal inside. She also

Case 3:19-cr-00172-FAB    Document 52    Filed 12/11/19    Page 8 of 23

*United States v. Pablo De La Cruz-Arias*                                    8
Report and Recommendation
Crim. No. 19-172 (FAB)

explained that she and the defendant are not married and that the red
Toyota Corolla belongs to her and was given to her by her father.

## II.    Discussion

### A.  Probable Cause

Defendant's first contention in his quest to suppress the evidence
in this case is that the Warrant fails to establish probable cause that
contraband would be found in Apartment 467 of Building 36 in the
VHPHP. In support of that contention, the defendant argues, among
other things, that 1) the affidavit lacks any details as to the confidential
informant's reliability or credibility, 2) Agent Alvarado-Díaz says she
saw only part of the weapon in one individual's waistband, and 3) the
defendant denies that there was anyone at his apartment on February
15, 2019. Analyzing the Warrant on its face, the Court finds that
defendant's arguments fail to demonstrate that the Warrant lacks
probable cause.

The Fourth Amendment protects "[t]he right of the people to be
secure in their persons, houses, papers, and effects, against
unreasonable searches and seizures." U.S. Const. amend. IV. With
limited exceptions, it requires police officers to secure a search warrant
supported by probable cause prior to effecting a search or seizure. *United
States v. Paneto*, 661 F.3d 709, 713 (1st Cir. 2011). Probable cause exists
when the application for the warrant demonstrates that (1) a crime has
been committed—the 'commission' element, and (2) enumerated
evidence of the offense will be found at the place searched—the so-called
'nexus' element." *United States v. Dixon*, 787 F.3d 55, 59 (1st Cir. 2015),
cert. denied, 136 S. Ct. 280 (2015) (quoting *United States v. Feliz*,
182 F.3d 82, 86 (1st Cir. 1999)).

In determining the sufficiency of an affidavit supporting a search warrant, courts consider whether the "totality of the circumstances" stated in the affidavit demonstrates probable cause to search the premises. *United States v. Beckett*, 321 F.3d 26, 31 (1st Cir. 2003) (citing *United States v. Khounsavanh*, 113 F.3d 279, 283 (1st Cir. 1997)). Courts examine the affidavit "in a practical, common-sense fashion and accord considerable deference to reasonable inferences the [issuing judicial officer] may have drawn from the attested facts." *Id.* (quoting *United States v. Barnard*, 299 F.3d 90, 93 (1st Cir. 2002)). Ultimately, "[p]robable cause exists whenever the circumstances alleged in a supporting affidavit, viewed as a whole and from an objective vantage, suggest a 'fair probability' that evidence of a crime will be found in the place to be searched." *United States v. Clark*, 685 F.3d 72, 76 (1st Cir. 2012) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

"All that is needed is a 'reasonable likelihood' that incriminating evidence will turn up during a proposed search." *Id.* (citing *Valente v. Wallace*, 332 F.3d 30, 32 (1st Cir. 2003)). The facts presented to the issuing judicial officer "need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." *United States v. Feliz*, 182 F.3d 82 (1st Cir. 1999) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). A judicial officer's review of a supporting affidavit should be given great deference and his or her decision to issue a warrant should only be reversed if there is no substantial basis for concluding that probable cause existed. *United States v. Procopio*, 88 F.3d 21, 25 (1st Cir. 1996).

Sometimes, law enforcement agents seeking search warrants rely on tips from confidential informants to form the basis of probable cause. In those cases, "the affidavit must recite some of the underlying circumstances from which the informant concluded that relevant

Case 3:19-cr-00172-FAB    Document 52    Filed 12/11/19    Page 10 of 23

*United States v. Pablo De La Cruz-Arias*                                    10
Report and Recommendation
Crim. No. 19-172 (FAB)

evidence might be discovered, and some of the underlying circumstances from which the officer concluded that the informant . . . was credible or his information reliable." *United States v. Graf*, 784 F.3d 1 (1st Cir. 2013) (quoting *United States v. Gifford*, 727 F.3d 92, 99 (1st Cir. 2013) ("Where the *primary* basis for a probable cause determination is information provided by a confidential informant, the affidavit must provide some information from which a magistrate can credit the informant's credibility."(Emphasis added).

In cases where a confidential tip does serve as the basis for probable cause, courts apply a "non-exhaustive list of factors" to examine the affidavit's probable cause showing, which include, among others: (1) whether the affidavit establishes the probable veracity and basis of knowledge of persons supplying hearsay information; (2) whether an informant's statements reflect first-hand knowledge; (3) whether some or all of the informant's factual statements were corroborated wherever reasonable or practicable (e.g., through police surveillance); and (4) whether a law enforcement affiant assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's provided information. *United States v. Tiem Trinh,* 665 F.3d 1, 10 (1st Cir. 2011).

In this case, the Warrant very clearly recognizes that the PRPD received a confidential tip from a paid informant to the effect that "at building #36 apartment 467 of the VHPHP, lives a white-complexioned young man, heavy set, of average height who uses the previously described apartment to store controlled substances and firearms." The Warrant, however, then proceeds to describe in exhausting detail two separate and distinct events, one from February 13, 2019, and the other from February 15, 2019, where Agent Alvarado-Díaz conducted surveillance on Apartment 467 and witnessed first-hand what, in her

training and experience, appeared to be drug transactions taking place. She also claimed to have witnessed at least one individual with a firearm visible in his waistband, enter Apartment 467, and within minutes emerge again to engage in a drug transaction on the porch of Apartment 467.

Admittedly, the Warrant does not contain any discussion regarding the reliability of the supposed confidential informant, nor who the informant might be, nor whether and how the informant was known to police. Nevertheless, based on a detailed review of the Warrant, it is clear that the confidential tip from the paid informant in this case cannot be said to have served as the "primary basis," nor any basis for that matter, for a probable cause showing. Indeed, one can argue that based on the follow-up investigation suggested by Sgt. Delgado-Arzuaga, and conducted by Agent Alvarado-Díaz, the confidential tip from the paid informant served as nothing more than a catalyst for beginning a much larger and more complete investigation involving active police surveillance in and around the immediate area of Apartment 467; an investigation that spanned several days.

In fact, if the Court were to strike any mention of the confidential tip, the Court nevertheless finds that the Warrant would comfortably pass muster in demonstrating with 'reasonable likelihood' *(462 U.S. at 238)* that incriminating evidence would turn up during a proposed search of Apartment 467. *See United States v. Young*, 877 F.2d 1099, 1102 (1st Cir. 1989) ("[i]f we excise (or otherwise appropriately adjust) all misleading statements from the affidavit, there is still a more than adequate showing of 'probable cause.' Thus, any misstatements are immaterial"). Even without reliance on the confidential tip, the affidavit provided the issuing judge substantial basis for probable cause.

It is for that reason that the Court finds that not only did the confidential tip not serve as the *primary* basis for the Court's probable cause determination in this case, but that based on the subsequent two police surveillances conducted by Agent Alvarado-Díaz, the confidential tip played an inconsequential role, if any, in making a final determination of whether probable cause existed. Accordingly, the Court need not engage in a lengthy analysis of the *Tiem Trinh* factors dealing with situations where probable cause is based primarily on a confidential tip.

With respect to defendant's remaining contentions regarding the supposed insufficiency of probable cause in the Warrant, namely, that Agent Alvarado-Díaz saw only part of the weapon, that she did not say whether she used binoculars in her surveillance and the fact that defendant claimed not to be present at the Apartment during the second day of surveillance, the Court finds that they do precious little to attack the probable cause that already exists in the Warrant. For that reason, defendant's attack as to the sufficiency of the probable cause in the Warrant fails.

## B. Defendant's challenge to the Warrant under *Franks v. Delaware*

Defendant's second contention in his attempt to suppress evidence in this case is that Agent Alvarado-Díaz' affidavit in support of the application for the Warrant "contained material [mis]statements that were either intentionally false . . . or [were] . . . made in reckless disregard for the truth." Docket No. 28 at 7. In support of his contention, the defendant submitted two unsworn statements under penalty of perjury; one signed by himself, and another signed by Ms. Bilbraut. Both statements contain identical language in their respective paragraphs 2 and 3. Paragraph 2 of each statement reads as follows: "I

Case 3:19-cr-00172-FAB    Document 52    Filed 12/11/19    Page 13 of 23

*United States v. Pablo De La Cruz-Arias*                                    13
Report and Recommendation
Crim. No. 19-172 (FAB)

deny that on February 13, 2019, at approximately 3:40 pm, a black, tall, thin, short haired male, wearing jeans and shirtless entered my apartment." Meanwhile, Paragraph 3 of each statement reads as follows: "On February 15, 2019, my residence was empty and locked because everyone who lives there went away from February 14 until 16, 2019."

In further support of the unsworn statement made in paragraph 3, the defendant attached as an exhibit to his Reply to the Government's Response to Defendant's Motion to Suppress (Docket No. 36), a hotel receipt from the Fajardo Inn for two adults for the dates February 14, 2019 through February 16, 2019. Having considered the arguments raised by the defendant, the Court finds that he has failed to meet his heavy burden to demonstrate that he should be granted an evidentiary hearing under *Franks v. Delaware*.

*The <u>Franks v. Delaware</u> Standard*

An affidavit supporting a search warrant is presumptively valid. *See United States v. Rigaud*, 684 F.3d 169, 173 (1st Cir. 2012). But if a defendant makes a "substantial preliminary showing that a false statement . . . with reckless disregard for the truth[ ] was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *see also, United States v. Barbosa*, 896 F.3d 60, 68 (1st Cir. 2018). If the defendant shows at the evidentiary hearing "perjury or reckless disregard," "the search warrant must be voided and the fruits of the search excluded," unless there is another basis for probable cause in the warrant besides the false statements. *United States v. Graf*, 784 F.3d 1, 8 (2015).

The First Circuit has consistently stressed that making a substantial preliminary showing is no easy feat. *Graf*, at 10. The Supreme Court further mandated that to make a substantial preliminary showing, a defendant must make "allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof." *Franks*, at 171. His "attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* He must "point out specifically the portion of the warrant affidavit that is claimed to be false" and accompany his allegations with a "statement of supporting reasons." *Id.* "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.*

In this case, the Court finds that the defendant offers nothing more than self-serving statements refuting Agent Alvarado-Díaz' statement that she saw one or more individuals with firearms entering and exiting Apartment 426 on February 13, 2019 and February 15, 2019 to engage in drug transactions. More specifically, the statement contained in paragraph 2 is unmistakably just an overt denial of what Agent Alvarado-Díaz said she saw during her surveillance conducted on February 13, 2019. It is precisely this sort of conclusory attack that the *Franks* Court deemed insufficient to defeat the presumption of validity to which a warrant affidavit is entitled. *Franks,* 438 U.S. at 171 ("To overcome this presumption and support a conclusory statement . . . the [plaintiff] must do more than construct a self-serving statement which refutes the warrant affidavit.").

With respect to paragraph 3 of the unsworn statements, specifically, the first part which claims that the residence was empty on February 15, 2019, the Court deems this to be like paragraph 2, a self-serving denial of the statement made by Agent Alvarado-Díaz.

Moreover, the fact that the defendant adds to the equation a hotel receipt from the Fajardo Inn does not seem to help his contention at all because it does not directly refute Agent Alvarado-Díaz' statement describing what she saw. Nor does it demonstrate in any way that she might be lying in her testimony.

Indeed, the defendant and Ms. Bilbraut could very well have been at the Fajardo Inn from February 14-16, 2019, and Agent Alvarado-Díaz could have seen a different individual, who is not the defendant, exit from Apartment 467 and deliver to another individual an open brown paper bag with several large transparent plastic bags filled with what looked like marijuana. In addition, the record reveals that the keys from one apartment were found in another apartment located within the same stairwell. That fact, in a sense, corroborates Agent Alvarado-Díaz' testimony that someone other than Ms. Bilbraut could have had keys to enter Apartment 467.

And finally, it is worth mentioning that although the confidential statement of the paid informant was not necessary for the Court to make a determination of probable cause in this case, the Court need not cover its eyes to the fact that the very conduct described by Agent Alvarado-Díaz is consistent with, and corroborates, the information provided by the informant, namely that the apartment was being used to store guns and drugs.

In conclusion, given the fact that the burden rests upon the defendant to demonstrate by preponderance of the evidence that the agent lied, and given the fact that that burden is substantial, the Court finds that the defendant's self-serving statements, without more, are insufficient to meet his burden. The Court therefore finds that defendant has not made a substantial preliminary showing that he was

entitled to even an evidentiary hearing under *Franks v. Delaware*, much less suppression of the evidence.

### C.  The "knock and announce" rule

In his third contention raised in his Motion to Suppress, the defendant complains that the agents violated the "knock and announce" rule by barging into his apartment at 4:00AM without giving anyone inside time to open the door. He claims that his two younger children were "traumatized by the agents' excessive use of force."

Notwithstanding defendant's complaints, nowhere in his Motion to Suppress does the defendant set forth any valid legal argument as to why a violation of the "knock and announce" rule would justify a remedy like suppression of evidence. Indeed, in its Opposition, the government cited to the case of *Hudson v. Michigan*, 547 U.S. 586, 593 (2006), among others, for the proposition that the "massive remedy of suppressing evidence of guilt for [a] violation [of the "knock and announce rule] is unjustified." *Id.* at 599; *see also United States v. Rigaud*, 684 F.3d 169 (1st Cir. 2012) (exclusion of evidence inappropriate even if no-knock warrant was insufficient because violation of knock-and-announce rule does not trigger exclusionary rule).

Thereafter, in his Reply to the Government's Opposition to the Motion to Suppress, defendant fails altogether to refute the government's contention that suppressing evidence for an alleged violation of the "knock and announce" rule is a complaint without a remedy. As the First Circuit has held on many occasions, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones . . .  Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace."

*United States v. Zannino*, 895 F.2d 1, 17 (1990) (quoting *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) and *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co.,* 840 F.2d 985, 990 (1st Cir. 1988)).

Nevertheless, even though defendant failed to fully develop this argument, the above case law makes pellucid that the defendant's reliance of the PRPD's purported violation of the "knock and announce" rule fails as a matter of law.

D. <u>Defendant's attack on the consent to search given by Ms. Bilbraut</u>

The defendant next contends that "the consent provided by Mrs. [sic] Bilbraut was involuntary. Therefore, the evidence seized as a result of [her] consent constitutes a fruit from the poisonous tree." Docket No. 28 at 10.

In its Opposition to the Motion to Suppress, the government responded to that argument by claiming that the defendant is proscribed from challenging the voluntariness of Ms. Bilbraut's consent because the defendant lacks standing to do so. More specifically, the government noted that because the defendant was neither the registered owner of the vehicle where the ammunition was found, nor did he have any connection whatsoever with that vehicle, he had no expectation of privacy over anything found therein.

Then, in his Reply to the government's Opposition, the defendant seemingly changed his tune, claiming instead that "standing is not the issue in this case." As a result, the defendant now appears to be arguing, that irrespective of the voluntariness of her consent, the ammunition found in the trunk of her car should be suppressed because it constitutes fruit of the poisonous tree; with the "poisonous tree" purportedly being the search performed pursuant to the illegal Warrant. Not only is

defendant's argument disjointed and convoluted, but it does not pass muster under the law.

To begin with, to the extent that defendant is attempting in any way to attack the consent given by Ms. Bilbraut, the Court finds that he lacks standing to do so. Under the Fourth Amendment, rights are personal and may not be asserted vicariously. As such, the first inquiry in examining a fourth amendment claim is whether the defendant had a legitimate expectation of privacy in the area searched or the item seized. *United States v. Sanchez*, 943 F.2d 110, 112-13 (1st Cir. 1991) (citing *Rakas v. Illinois*, 439 U.S. 128, 138-48 (1978)). A defendant who fails to demonstrate a sufficiently close connection to the relevant places or objects will not have "standing" to claim that they were searched or seized illegally. *See Rakas*, 439 U.S. at 130-31 n. 1 (burden of proving a reasonable expectation of privacy is on the proponent of a motion to suppress); *United States v. Garcia-Rosa*, 876 F.2d 209, 219 (1st Cir. 1989), vacated on other grounds, 498 U.S. 954, (1990), aff'd, 930 F.2d 951 (1st Cir. 1991) (same).

Here, the record is clear that the red 2009 Toyota Corolla, inside of which the ammunition which serves as the basis for the charges against the defendant was found, is registered in the name of Ms. Bilbraut's father, but that, in reality, it belongs to her. *See* Docket No. 34-4. Moreover, throughout the record, whenever Ms. Bilbraut refers to the vehicle, she refers to it as "my" car, and when the defendant refers to it, he refers to it has "her" car. In addition, during the defendant's recorded interview with law enforcement, he further clarified that the vehicle "belonged to Ms. Bilbraut and that he would rarely use it unless he was riding with her." Docket No. 34 at 14. Accordingly, the Court finds that the defendant had little to no connection with the vehicle such

Case 3:19-cr-00172-FAB    Document 52    Filed 12/11/19    Page 19 of 23

*United States v. Pablo De La Cruz-Arias*                                    19
Report and Recommendation
Crim. No. 19-172 (FAB)

that an expectation of privacy could be exercised over anything found therein.

With respect to defendant's argument that the ammunition should be suppressed because it constitutes fruit of an illegal search, the Court has already found above that the Warrant was not illegal, neither on its face nor in its execution, and it did not contain material misstatements. Accordingly, because the underlying search was not illegal, to the extent that the ammunition could even be considered a fruit of that search, defendant's argument must necessarily fail.

E. <u>The defendant's attempt to suppress his post-arrest statements as being coerced</u>

In yet another bare-bone and conclusory argument,[4] the defendant contends that he was coerced by the agents into giving a confession when he was "told by the PRPD agent who arrested [him] that [he] needed to take responsibility of the ammunition to avoid [his] consensual partner being charged with a crime." Docket No. 28-2 at ¶¶ 9-10. The defendant raises such factual contention in one lone sentence that is utterly devoid of any explanation or discussion in support thereof. The defendant simply declares that "[w]hen the voluntariness of a confession is challenged, the government must prove by a preponderance of the evidence that it was properly elicited." Docket No. 28 at 10. The Court understands therefore that the defendant is simply putting the government to its burden.

---

[4] The defendant included a sentence in this section of his Motion to Suppress that reads as follows: "First, Mr. De la Cruz was placed under arrest before the police searched Mrs. [sic] Bilbraut's car." There is no follow-up discussion, nor any explanation as to how, if at all, such fact affects the voluntariness of defendant's confession. The Court cannot fill-in the gaps left by defendant's failure to fully develop his argument. The government made some attempts in its Opposition to surmise what defendant could possibly be hinting at with the above statement. The Court, however, will not accompany the government down that rabbit hole in trying to surmise what the defendant meant by that sentence. *Zannino*, 895 F.2d at 17.

Generally speaking, "[a]n involuntary statement violates due process and its admission into evidence mandates vacation of the conviction even though other evidence in the case would have been sufficient to convict. *United States v. Jackson*, 918 F.2d 236 (1st Cir. 1990) (citing *Jackson v. Denno*, 378 U.S. 368, 376 (1964)). The voluntariness of an admission depends on "whether the will of the defendant [was] overborne so that the statement was not his free and voluntary act, and that question [is] to be resolved in light of the totality of the circumstances." *Jackson*, 918 F.2d at 240 (quoting *Bryant v. Vose*, 785 F.2d 364, 367–68 (1st Cir. 1986), citing *Procunier v. Atchley*, 400 U.S. 446, 453 (1971)); *see also United States v. Holmes*, 632 F.2d 167, 168–69 (1st Cir. 1980).

While the burden indeed rests with the government to prove voluntariness by a preponderance of the evidence, the reviewing court must "'examine the entire record and make an independent determination of the ultimate issue of voluntariness.'" *Jackson*, at 241 (quoting *United States v. Bienvenue*, 632 F.2d 910, 913 (1st Cir. 1980)).

In this case, defendant's involuntariness claim is based exclusively on the contention that a comment by agents that his consensual partner might be charged with a crime exerted psychological pressure sufficient to overcome his will and coerce an admission that the ammunition found in the trunk of Ms. Bilbraut's vehicle actually belonged to him. The Court's independent review of the record reveals that the defendant's statement accepting ownership of the ammunition was entirely voluntary.

As the Supreme Court indicated more than a century ago, in a case still cited as controlling precedent on the voluntariness of confessions, for a confession to be voluntary it "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied

promises, however slight, nor by the exertion of any improper influence . . ." *United States v. Bram*, 168 U.S. 532, 542–43, (1897). *See, e.g., Malloy v. Hogan*, 378 U.S. 1, 6–7 (1964); *Brady v. United States*, 397 U.S. 742, 754–55, (1970); *Hutto v. Ross*, 429 U.S. 28, 30 (1976) (all citing to *Bram*, on voluntariness of confession).

In this case, the Court notes that the facts are nearly identical to those in the case of *United States v. Jackson*, 918 F.2d 236 (1st Cir. 1990). In *Jackson*, the defendant claimed that his admission to owning cocaine, but not a firearm, that was found in the center console of a car he was driving, was involuntary, and hence inadmissible, because he said the police exerted psychological pressure over him by informing him, during an interrogation about the ownership of the firearm, that his sister was under arrest for a gun violation.

In holding that Jackson did not lose volitional control, nor was his will overborne, the Court noted that,

> there is no evidence that Jackson was subjected to direct threats or promises. Moreover, even if we were to assume that the police did use an implied "threat" or "promise" that Jackson's sister might be caused or spared harm, depending on whether or not Jackson admitted ownership of the firearm, we still could not conclude that his will was overborne. Although *Bram* has not been overruled, it has been modified. The Congress and the courts have indicated that to determine voluntariness it is necessary to look at the totality of the circumstances, including any promises or threats made by police officers or the prosecution, in order to see whether the will of the accused was overborne.
>
> Jackson relies in particular on *Lynumn v. Illinois*, 372 U.S. 528 (1963), and *United States v. Tingle*, 658 F.2d 1332

(9th Cir. 1981), for the proposition that psychological coercion generated by concern for a loved one may make an admission involuntary. Like the district court, we find *Lynumn* and *Tingle* distinguishable. The defendants in *Lynumn* and *Tingle*, both mothers, were coerced by threats that their children would be taken from them unless the defendants cooperated with the police. There was evidence also that the defendants in both cases may have been more susceptible to psychological coercion than defendants more familiar with the criminal justice system.

In this case, any psychological pressure exerted on Jackson related to an adult sibling, not a child. There is no evidence that an especially close relationship existed between Jackson and his sister, or that Jackson was unusually susceptible to psychological coercion on that account or any other, particularly in light of Jackson's very substantial previous experience with the criminal justice system. The totality of these circumstances indicate that Jackson did not lose volitional control, nor was his will overborne.

In this case, the analysis is the same. The defendant is a convicted felon who iss no stranger to the criminal justice system. Moreover, there is no evidence in the record that the defendant was particularly close with his consensual partner. Indeed, there is no suggestion that the defendant broke down or reacted in a particularly emotional manner upon hearing the suggestion that Ms. Bilbraut might be charged with a crime. Furthermore, the record suggests that the defendant did not actually live at Apartment 467, nor did he even possess a set of keys to that apartment.

In summary, absent defendant's self-serving and conclusory statement in his Motion to Suppress that he felt "threatened" when the agent mentioned that Ms. Bilbraut might be charged with a crime, the record is utterly devoid of any evidence that would suggest that the agent's comment somehow overbore defendant's will or caused him to lose volitional control. For that reason, the Court finds that the government has met its burden by preponderance of the evidence that defendant's statement regarding ownership of the ammunition was made voluntarily.

### III.  <u>**Conclusion**</u>

For the reasons espoused above, it is recommended to the Court that the defendant's Motion to Suppress (Docket No. 28) be **DENIED**.

**IT IS SO RECOMMENDED.**

The parties have fourteen days to file any objections to this Report and Recommendation. Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150 51 (1st Cir. 1994); *United States v. Valencia Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 11th day of December 2019.

<u>**s/ Marshal D. Morgan**</u>
MARSHAL D. MORGAN
UNITED STATES MAGISTRATE JUDGE